The next case for argument is Torbica v. Horizon Bank. Mr. Ellis. Thank you, Your Honor. I'd like to reserve two and a half minutes for rebuttal. We're here today on the district court's grant of summary judgment on Mr. Torbica's age discrimination claim, in which the court determined there simply wasn't enough evidence to conclude that age was a but-for cause for Horizon to omit his employment. And, Mr. Ellis, you are only appealing the age discrimination ruling, correct? That's correct, Your Honor. Now, the key fact in this case around which all other evidence should be viewed is Mr. Torbica's testimony about his conversations with Noe Nihira, his supervisor, throughout the course of their supervisory relationship. Now, Mr. Torbica testified that Nihira consistently asked Mr. Torbica when he was going to retire, even though Mr. Torbica made it clear, both to him privately, personally, and publicly, that he had his son in college, that he had seven years of college to go, and Mr. Torbica told him he wanted to work ten more years, it never stopped. And, most critically, it even happened a couple of times when they would take clients out for lunch, that Nihira would ask him, so how long do you plan on working for? Now, the district court dismissed this evidence as being a stray remark that was too remote in time to support causation, but it's better viewed as part of a continuous attempt to drive Mr. Torbica out of his employment, which ran parallel to a formal proposal that he worked on, Nihira worked on, from at least March of 2020 through the final proposal in October and termination subsequent January. Rather than a one-off conversation, or even a two-off conversation, just as to these public inquiries in front of clients. Now, this conduct by Nihira, these retirement inquiries, were accompanied by other suggestive conduct and comments that would support an inference of age discrimination, including a discussion that he had with Mr. Torbica in which he talked about how unwanted employees could be managed out, including through the use of retirement, the inclusion of the ages of each of the three mortgage loan originators in this document that was at least a part of the mini-RIF analysis, so it at least showed that the ages of these people were in the minds of Nihira as he was making his decision. And in addition to being persistent and being publicly humiliating, it was accompanied by an unusual abandonment by Nihira of a formal process for making determinations about personnel decisions. These decisions are normally made in October of each year to take effect the following year. The records show that Nihira had begun preparing memoranda for the elimination of Mr. Torbica's employment as of March, six months in advance of the normal time in which these decisions would be made. And as part of that process, he refused to consider all three of the mortgage loan originators on the merits of their performance in their position. Specifically, he refused to consider eliminating the position of Mr. Simmons, who at 52 was nearly 10 years younger than Mr. Torbica, on the grounds that he had some special, unique connection to the central Indiana market. Nihira also refused to consider evidence that related to changing market conditions that were contrary to the purpose of eliminating the position in the first place, namely that there was some kind of stagnancy in their mortgage market well in advance of actually making the formal proposal. Nihira knew by the summer of 2020 that the mortgage loan originators had already brought in revenues equal to the entire prior year, and by the time the decision was enacted, he knew they had doubled it. We're not asking the court to determine that just because perhaps he made unwise decisions, that that's a reason to believe that he was motivated by age discriminatory motives, but all of these things together do support a view that a jury could reach that it was indeed age. These persistent retirement inquiries, the abandonment of an ordinary, well-established process for making these determinations, the refusal to consider at all, much less consider and rule out, but the refusal to consider eliminating the youngest candidate, the refusal to consider market conditions that related to the decision, and then in his testimony and even in his internal memoranda, Nihira was at best inconsistent in his description of the reasons and the timeline. Notably, he claimed to have eliminated the position of a Mr. Townsend on the basis of a cost-saving motive, when in reality the termination was due to a performance reason, and in his testimony in this case, his description of the timeline of his decision was not consistent with what we later discovered was he had been working on this decision for months, six months prior to the budget process. He testified that he began considering it in October. So these three items really go to what this court has previously identified as types of evidence that could support an inference of discrimination. There is conduct by Nihira, including the express, repeated, and humiliating inquiries into Mr. Torbika's retirement. There are comparators. There's a nine-year younger comparator who was not even considered for termination, and then there's evidence that Mr. Nihira has been at best inconsistent, dishonest in his accounting of both his rationale and the timeline for making his decision. So if the court has no further questions, then we'll reserve the rest of my time. Certainly, counsel. Thank you, Your Honor. Mr. Craig. Thank you. Thank you, Your Honors. In this case, the district court properly granted summary judgment in favor of Horizon Bank on Mr. Torbika's employment discrimination claim, arising under both the Age Discrimination Employment Act and Title VII. Mr. Torbika failed to provide evidence of age discrimination and failed to establish a prima facie case of age discrimination using the burden-shifting framework from McDonnell Douglas. With respect to any direct or circumstantial evidence of age discrimination, the evidence viewed holistically by the district court simply does not support any inference that age was the but-for cause of Mr. Torbika's termination. There are three categories of circumstantial evidence that courts typically look at in these types of cases, including first, ambiguous or suggestive comments or conduct, second, better treatment of people similarly situated except for their age, and third, dishonest justifications for disparate treatment. With respect to the alleged ambiguous or suggestive comments, the focus in the briefing and the argument this morning has been on these retirement inquiries. Now, Mr. Torbika himself, as he testified in his deposition, voluntarily shared his plans about retirement on multiple occasions, claiming it was common knowledge that he planned to retire at age 70 because of his son's ongoing college attendance. While Mr. Nehera asked Mr. Torbika about those plans, there's no evidence that stemmed from any age animus or intent to discriminate on the basis of age. And, in fact, this court has held in multiple cases, including cases cited by Mr. Torbika, that there is no evidence of age discrimination when retirement is suggested as an option in a case, and that's the Patassi v. Garner Group case where the court also stated that an employer's, quote, suggestion of retirement does not alone give rise to an inference of discrimination. Even requests that employees retire, which are not alleged in this case, are, the court has held, quote, not necessarily a reference to an employee's age. That's Holloway v. Milwaukee County. And in Canna v. Allstate Insurance Company, the court held, quote, the suggestion of retirement does not rise to the level of direct evidence of age discrimination. So those comments by themselves aren't enough. And then when we look at the remaining evidence, they simply don't add up, taking a holistic view to evidence of age animus. So with respect to Mr. Nehera's comments about managing out employees, that is, those come from statements Mr. Torbika attributed to Mr. Nehera in Mr. Torbika's deposition, where he described a conversation where Mr. Nehera said basically there are four ways employees leave a company. They retire, they quit, they're fired, or they're managed out. It's not clear, and there's really no evidence that Mr. Nehera described retirement as a way of managing out an employee. Instead, retirement and being managed out are methods of sort of managing employee attrition or departure. Then there's also a discussion in the briefs about a spreadsheet analysis that's supposedly provided by Mr. Nehera that included, that was alleged to include Mr. Torbika's age. But the only evidence before the district court is that that spreadsheet was attached to an email from the Vice President of Human Resources, Cindy Presinel, which was sent to Mr. Nehera, and Ms. Presinel indicated it was an update of his analysis in terms of which of the three managers would be terminated. There's also no evidence that younger employees were treated better. So, you know, and here there's a particular breakdown between the alleged views of Mr. Nehera and the treatment of Ms. Goboyan, who was six years younger than Mr. Torbika, and Mr. Simmons, who was about nine years younger. Mr. Torbika complains that they were given more favorable commission rates. This was explained that that was based on a difference in their territory, but critically, when evaluating the evidence holistically, those decisions were made before Mr. Nehera became Mr. Torbika's supervisor. That system was in place when Keane Taylor was Mr. Torbika's supervisor. Nor were the geographic territory assignments that Mr. Torbika complains of made by Mr. Nehera. And the commission structure for the mortgage loan originators who worked, who were supervised by the managers, also were not set by Mr. Nehera. And, in fact, the evidence is that the commissions paid to those originators supervised or managed by Mr. Torbika were competitive with those in the northwest Indiana market they served. And the allegation that Mr. Simmons received special treatment because he wasn't considered for elimination doesn't relate to age. It relates to the fact that he was responsible for the central Indiana market, he lived in central Indiana, and he had connections to realtors and home builders in central Indiana. Further, neither Ms. Gaboyan nor Mr. Simmons were, under the ADEA, substantially younger than Mr. Torbika. Again, the difference was about six years and nine years. And this court has held that a ten-year age difference is presumptively substantial, but, importantly, did not find a difference of seven years substantial in the case of Hartley v. Wisconsin Bell. It did not find a five-year difference substantial in the case of Bennington v. Caterpillar. So, you know, Mr. Torbika argues on page 15 of his brief that the district court should have considered the age differences in this case, despite their, you know, not being ten years or greater. And he writes, quote, because the age differences, he says, support the conclusion that Nehera was motivated by age defier. But evidence of age discrimination and age difference, evidence of age differences can't become relevant simply because they would support an ADEA claim. Or else, in every case, you know, any age difference would then, could be considered substantial because it would support the plaintiff's allegation. Now, with respect to the alleged dishonest justifications for the decision to terminate Mr. Torbika, those don't withstand scrutiny either, as the district court found. Again, Mr. Nehera found that Mr. Simmons was appropriate to retain in Central Indiana because of his connections and his living in the market. He also concluded, which is supported by the evidence designated to the district court, that Ms. Gaboyan had significantly better mortgage origination numbers by her team than Mr. Torbika did. And she had better performance evaluations in both 2019 and 2020. As to when the work started on, you know, an evaluation of whether one of these positions should be eliminated, it did start before the budget process. It started in March 2020, the beginning of the COVID-19 pandemic. So, it's not surprising that a person in a supervisory role would be looking to some kind of method to control costs, to reduce costs. And, importantly, the decision was not implemented until the end of the year through that normal budget process, with input by other leadership, including the Vice President of Human Resources, as mentioned earlier, and ultimately approved by the CEO and President. Finally, the contention that, you know, Mr. Nehera simply ignored the extraordinary growth in 2020, and therefore should have retained Mr. Torbika, ignores Mr. Nehera's testimony that he did not consider the 2020 numbers reliable. There was, in fact, tremendous growth during that period in mortgage origination, but that related to many factors unique to the pandemic, unique to changes in spending, and, you know, looking at the numbers from 2018 and 2019, which Mr. Nehera believed would be more representative, made the decision to stick with his plan formed earlier in the year to reorganize that department and to eliminate that position of Mr. Torbika. So, for that reason, Your Honor, the district court properly granted summary judgment, and we ask that decision be affirmed in all respects. Thank you. Thank you, Mr. Craig. Anything further, Mr. Ellis? Thank you, Your Honor. I just want to address a few points. First, there have been a number of cases that have been cited in the briefs with regards to the application of the straight remark doctrine. This court has had occasion to review a number of cases in which there have been single conversations in which comments were made about retirement, unconnected or with no other apparent connection to any age discriminatory act. This case is unlike those cases in that there was a continuous effort throughout the course of Mr. Nehera's supervision of Mr. Torbika. And this court has previously described in the Potassi case that repetitive inquiries can be viewed as, can lead to an inference of age discrimination because of the subtle pressure that they can be used to create in the employee, versus an actual stray remark, which may just be truly stray. The other issue I want to address is this 10-year rule as to a presumptively substantially younger employee. That's a line, a bright line that this court has drawn for the purposes of a burden-shifting analysis. Only if you are over 10 years, then you have a presumptively substantially different age under which an inference of age discrimination can be drawn. If you are under 10 years, then the court considers whether there's other evidence that would help support an inference of discrimination. It's not a bright line rule under which cases where there is 10 years, there may be age discrimination. In cases under 10 years, there may not be age discrimination. And finally, just to be clear about this work that was being performed by Nehera in early 2020, he began work on eliminating Mr. Torbika's position before the pandemic occurred. That memo was dated March 10. There had not been a lockdown yet. COVID was clearly on the horizon. But at that time, I think the public opinion was this is something that may blow over within a week or two, not the sort of thing that there's any evidence to believe would lead a decision maker to make substantial changes in their business strategy. Thank you, Your Honor. Thank you very much. The case is taken under advisement.